FILED
2011 Aug-02  PM 01:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| Rt. Rev. HENRY N. PARSLEY, JR., in his official capacity as Bishop of the Episcopal Church in the Diocese of Alabama; Rev. Dr. WILLIAM H. WILLIMON, in his individual capacity as Bishop of the North Alabama Conference of the United Methodist Church; Most Rev. THOMAS J. RODI, Roman Catholic Archbishop of Mobile, a corporation sole; and Most Rev. ROBERT J. BAKER, Roman Catholic Bishop of Birmingham in Alabama, a corporation sole; | Civil Action File No.: |
| Plaintiffs, | _____ _____ ____ |
| v. | CV-11-S-2736-NE |
| ROBERT BENTLEY, in his official capacity as Governor of the State of Alabama; LUTHER STRANGE, in his official capacity as Attorney General of the State of Alabama; and ROBERT L. BROUSSARD, in his official capacity as District Attorney of Madison County, Alabama, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## COMPLAINT

## PRELIMINARY STATEMENT

1. Motivated by God's mandate that the faithful are humbly bound to welcome and care for all people, the leaders of the Episcopal, Methodist and Roman Catholic churches of Alabama respectfully request this Court to stop the enforcement of Alabama's Anti-Immigration Law. The bishops seek this Court's declaratory and injunctive relief to prevent irreparable harm to the 338,000 members of Alabama's Episcopal, Methodist and Roman Catholic churches as well as other residents, who will directly suffer under Alabama's new law, the nation's most merciless anti-immigration legislation. If enforced, Alabama's Anti-Immigration Law will make it a crime to follow God's command to be Good Samaritans. Luke 10:25-37. Without relief from this Court, the Law will prohibit the members of these mainstream congregations from being able to freely practice their faith to minister to all of God's children without regard to immigration status. If enforced, the Law will place Alabama church members in the untenable position of verifying individuals' immigration documentation before being able to follow God's Word to "love thy neighbor as thyself." Matthew 22:39. Alabama's Anti-Immigration Law may brand Christians as criminals.

2. The Anti-Immigration Law, No. 2011-535 of the 2011 Regular Session of the Alabama Legislature, violates the First Amendment rights of members of

2

Alabama's faith community to freely exercise their requisite duty to practice the Gospel. Biblical teachings to extend hospitality to all people without reservation are obligatory to members of Alabama's Episcopal, Methodist and Roman Catholic religions as well as other faiths. These Bible-based instructions to feed the hungry, shelter the homeless and clothe the naked are in direct conflict with the Law's restrictions against assisting undocumented Alabama residents. In fact, Representative Micky Hammon, who sponsored the House Anti-Immigration Bill ("HB 56"), admitted that the intention is to ensure Alabamians are *inhospitable* to strangers. "This bill is designed to make it difficult for them to live here so they will deport themselves," Representative Hammon said. Kim Chandler, "Alabama House passes Arizona-style immigration law," *The Birmingham News*, April 5, 2011. In contrast, the Bible is replete with directions on how to selflessly welcome all people without reservation such as:

- 1 John 3:17
  But if anyone has the world's goods and sees his brother in need, yet closes his heart against him, how does God's love abide in him?

- Matthew 25:35-40
  For I was hungry and you gave me food, I was thirsty and you gave me drink, I was a stranger and you welcomed me, I was naked and you clothed me, I was sick and you visited me, I was in prison and you came to me.' Then the righteous will answer him, saying, 'Lord, when did we see you hungry and feed you, or thirsty and give you drink? And when did we see you a stranger and welcome you, or naked and clothe you? And when did we see you sick or in prison and visit you?' And the King will answer them, 'Truly, I say to you, as you did it to one of the least of these, my brothers, you did it to me.'

3

■ Exodus 22:21
You shall not wrong or oppress a resident alien, for you were aliens in the land of Egypt.

3. Members of Alabama's Episcopal, Methodist and Roman Catholic churches will perpetrate crimes by knowingly providing food, clothing, shelter and transportation to those in need without first ensuring compliance with the stipulations of the Anti-Immigration Law. Moreover, the ministry of the churches, by providing such services to known undocumented persons, is criminalized under this Law. To forbid members of Alabama's faith communities from providing these services is in violation of their sincere religious belief to help others without reservation. Members of Alabama's Episcopal, Methodist and Roman Catholic churches are so sincerely committed to welcoming strangers that they demonstrate their commitment by engaging in ministries throughout the state to provide meals, housing, transportation and educational services.

4. The Catechism of the Roman Catholic Church well summarizes the doctrine of service that is also embraced by the Episcopal and Methodist denominations in the words of the Epistle of James:

He who has two coats, let him share with him who has none; and he who has food must do likewise. But give alms those things which are within; and behold, everything is clean for you. If a brother or sister is ill-clad and in lack of daily food, and one of you says to them, 'Go in peace, be warmed and filled,' without giving them the things needed for the body, what does it profit?

4

§ 2447 of the *Catechism of the Catholic Church* available at

http://www.vatican.va/archive/ccc_css/archive/catechism/p3s2c2a7.htm.; see also

James 2:15-16.

5. In addition, the Anti-Immigration Law violates the rights of Alabama residents to freely assemble and welcome all people to the altar. Due to fear of criminal prosecution, many residents will be unable to attend worship services, Bible study and other religious activities, and many Christian citizens of the state will be prohibited from assisting them in doing so.

6. The Anti-Immigration Law also violates the ability of the Episcopal, Methodist and Roman Catholic churches to freely contract in Alabama. The churches enter into contracts daily through the management of denominational thrift stores benefiting those in need as well as through the operation of church day cares. Also, the Episcopal, Methodist and Roman Catholic churches facilitate contracts with individuals as well as between individuals and their congregations by performing marriages, baptisms and providing counseling services. The churches will be in criminal violation of the Law by failing to verify the immigration status of individuals whom they suspect of being undocumented. Further, the Bishops have reason to fear that administering of religious sacraments, which are central to the Christian faith, to known undocumented persons may be criminalized under this Law.

5

7.  Among other constitutional defects, the Anti-Immigration Law is void for vagueness because the authors fail to ensure an average citizen can understand what constitutes violations, what the penalties are and what are the exemptions and allowable activities. For example, the Law intends "to criminalize certain behavior relating to concealing, harboring, shielding, or attempting to conceal, harbor, or shield unauthorized aliens" but then fails to define what constitutes "concealing, harboring" or "shielding." In addition, the Law fails to delineate what attributes should cause one to suspect an individual may be "unauthorized."

8.  The Anti-Immigration Law runs counter to the Christian spirit of compassion. The law is unconstitutional and a direct affront to the recognized and accepted Word of God. Because Alabama citizens are entitled to freely exercise their religion to show mercy to all people regardless of their immigration status, the leaders of the Episcopal, Methodist and Roman Catholic churches of Alabama respectfully request this court to issue declaratory and injunctive relief to stop the enforcement of the Law.

## JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 because this action seeks to

6

redress the deprivation, under color of state law, of the plaintiffs' civil rights and to secure equitable or other relief for the violation of those rights.

10. This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57.

11. Venue is proper in this District and Division under 28 U.S.C. § 1391(b). The defendants are sued in their official capacities. Each defendant resides within the State of Alabama and at least one defendant resides within this District and Division.

## PLANTIFFS

12. The Right Reverend **Henry N. Parsley Jr**. is the Episcopal Bishop of Alabama and is the spiritual and administrative leader of the Diocese.

13. Established in 1830, the Episcopal Church in the Diocese of Alabama encompasses 33,000 members in 91 parishes and worshipping communities and eight college campus ministries. The Diocese includes all of Alabama except the Gulf Coast region.

14. In his role, Bishop Parsley represents all 33,000 members of the Alabama diocese.

15. In general, the Episcopal Church is organized into dioceses led by bishops in consultation with representative bodies of the larger church as a whole.

16. The Episcopal Church is a fellowship within the one holy catholic and apostolic church, propagating the faith as set forth in the Bible and the Book of Common Prayer.

17. "The Episcopal Church strives to live by the message of Christ, in which there are no outcasts and all are welcome. Walking a middle way between Roman Catholicism and Protestant traditions, we are a sacramental and worship-oriented church that promotes thoughtful debate about what God is calling us to do and be, as followers of Christ." *Welcome to the Episcopal Church!* at http://www.episcopalchurch.org/visitors.htm.

18. Episcopalians are expected to confess and accept Jesus Christ as Savior and follow and obey His commands.

19. The Episcopal Book of Common Prayer includes the Articles of Religion which outline the responsibility of Episcopalians, including those in Alabama, to welcome and help others:

> Albeit that Good Works, which are the fruits of Faith, and follow after Justification, cannot put away our sins, and endure the severity of God's judgment; yet are they pleasing and acceptable to God in Christ, and do spring out necessarily of a true and lively Faith; insomuch that by them a lively Faith may be as evidently known as a tree discerned by the fruit.

Article 12 of the *Articles of Religion* available at http://www.anglicansonline.org/basics/thirty-nine_articles.html.

8

20. The Baptismal Covenant of the Episcopal Church contained in the

Book of Common Prayer specifically outlines the requirement that church

members respect the dignity of every human being.

21. The Episcopal churches in Alabama engage in the following

activities, among others, to meet the needs of all people:

- Community Kitchens: A program to provide nutritious meals to the hungry, homeless and working poor without regard to situation or condition.

- Literacy Programs: Initiatives in several Alabama Episcopal churches to tutor adults and children in reading and English as a second language.

- Iglesia de la Gracia: A parish in Huffman, Alabama dedicated to ministering to persons of Hispanic descent.

- "55th Place" and other community outreach thrift stores: Not-for-profit organizations that re-sell donated items to raise money of which 100 percent is donated to organizations and people in need in Alabama.

- Housing: Episcopal Place and other programs that provide subsidized housing for elderly and disabled Alabama residents with limited income.

- Hospitality for the Homeless: Through the Birmingham Hospitality Network and other programs, Episcopalians in Alabama provide temporary housing and meals to homeless individuals at their churches. Birmingham Hospitality Network is an ecumenical program that also includes Methodist and Roman Catholic churches as well as congregations from other faiths.

- Church Day Cares: Day Cares sponsored by the Episcopal Church and housed at churches throughout Alabama provide care on a regular basis to children who are church members and others without requirements of immigration status.

- Greater Birmingham Ministries: Dedicated to providing meals, temporary shelter, clothing, job training and education to Birmingham's homeless and working poor.

- Health Care Clinics: Free clinics to provide medical services to those in need in Decatur, Gadsden and Anniston, Alabama.

- Beans and Rice Ministries: Churches distribute beans, rice and other food to those in need. At Grace Episcopal Church in Anniston, members give the food "to anyone no questions asked." *Get Connected!*, Grace Episcopal Church, available at http://www.graceanniston.org/pages/?pageID=30.

- Camp McDowell: The camp and conference center for the Episcopal Church in the Diocese of Alabama provides summer camps and other activities for children and adults. The McDowell Environmental Center also provides outdoor learning experiences for school groups. The camp is open to all persons regardless of their immigration status.

22. The Reverend Dr. **William Henry Willimon** is Bishop of the North Alabama Conference of the United Methodist Church. Bishop Willimon has authored more than 60 books.

23. In his role, Bishop Willimon oversees 744 churches with more than 152,000 members in Alabama.

24. The United Methodist Church uses an episcopal system of governance with bishops providing the top leadership.

25. United Methodists have an obligation to bear a faithful Christian witness to Jesus Christ.

26. To fulfill this obligation, United Methodists practice what Methodist founder John Wesley referred to as "practical divinity," meaning that Methodists continually strive to reach out to people and welcome them into the church.

27. Based on the "Great Commission" in Matthew 28:19-20, the United Methodist Church's stated purpose is: "To make disciples of Jesus Christ for the transformation of the world."

28. The organization, beliefs and official policies of The United Methodist Church are contained in the Articles of Religion of The Methodist Church, first published in the church's Book of Discipline in 1790.

29. As outlined in the Book of Discipline, the Methodist Church's mission includes engaging in ministry to honor "the memory of Jesus' life of service to others."

30. Ministries of the North Alabama Conference of the United Methodist Church include, among others:

- Carpenter's Hand: A program committed to providing safe, decent, affordable housing to low-income families.

- Counseling Centers:  Provides a variety of counseling services to communities throughout Alabama.

- Tornado Relief: Provides temporary relief in the form of clothing, food, shelter and monetary gifts to Alabama residents recovering from the April 2011 tornados.

11

- **Housing Services:** Methodists in Alabama provide temporary housing and meals to homeless individuals at their churches as well as through the Birmingham Hospitality Network, an ecumenical program that also includes Episcopal churches as well as congregations from other faiths.

- **Church Day Cares:** Day Cares sponsored by the Methodist Church and housed at churches throughout Alabama provide care on a regular basis to children who are church members and others without requirements of immigration status.

- **Community Ministries:** A program to provide hands-on services to homeless individuals throughout Alabama. The program includes "Project ID," an initiative to secure photo identification for transient individuals in Alabama.

- **Church of the Reconciler:** A worship facility primarily focused on serving Birmingham's homeless and transient community.

- **Greater Birmingham Ministries:** Dedicated to providing meals, temporary shelter, clothing, job training and education to Birmingham's homeless and working poor.

31. The Most Rev. **Thomas J. Rodi** is the Roman Catholic Archbishop of Mobile, a corporation sole, and the Most Rev. **Robert J. Baker** is the Roman Catholic Bishop of Birmingham in Alabama, a corporation sole. Together, Archbishop Rodi and Bishop Baker represent 159 Roman Catholic churches in Alabama with 153,000 parishioners.

32. Pope Benedict XVI appointed Archbishop Rodi the Archbishop of Mobile in June of 2008.

33. Previously, Archbishop Rodi received a law degree from Tulane University and a master of divinity from Notre Dame Seminary.

34. Archbishop Rodi served as a judge for the Metropolitan Tribunal, which handles marriage cases, and also served as professor of canon law at Notre Dame Seminary from 1986 to 1995.

35. Pope Benedict XVI appointed Bishop Baker the bishop of Birmingham in Alabama in 2007.

36. Previously, Bishop Baker received a doctorate in theology from the Gregorian University in Rome and served on the faculty of St. Vincent de Paul Seminary in Boynton Beach, Florida, before being appointed pastor of the Cathedral of St. Augustine in St. Augustine, Florida in 1984.

37. While in St. Augustine, Florida, Bishop Baker helped to establish a soup kitchen, shelter house and a farm for the homeless and addicted.

38. Bishop Baker also co-edited three books including, *Welcome the Stranger: Contemporary Ministry in the Church of Florida.*

39. Individual areas of the Roman Catholic Church, such as Alabama, are known as dioceses and are overseen by a Roman Catholic bishop.

40. The Birmingham and Mobile dioceses are missionary in nature, and share a commitment to share the love of God with all peoples especially the poor and unchurched. Mission Statement, Diocese of Birmingham, Alabama, available at http://www.bhmdiocese.org/content.asp?id=208776.

41. The dioceses also share the mission to "help heal our sisters and brothers in their brokenness with the compassion and peace of Jesus, regardless of religion, race, gender, age or social status." *Id.*

42. As a denomination, the Roman Catholic Church is committed to "helping people meet their most basic needs." Catholic Charities, *"Meeting People's Basic Needs,"* www.catholiccharitiesusa.org.

43. Roman Catholics are called "to witness the love of God through compassionate care of all God's children and to work prophetically, as Jesus did in his time, to build a more just and equitable society." *Id.*

44. The churches that comprise the Birmingham and Mobile dioceses fulfill the Roman Catholic mission by engaging in the following good works, among others:

- Catholic Schools: The dioceses operate 56 schools for children ranging in grades from preschool through high school.

- Campus Ministries: Alabama Catholics provide religious and fellowship opportunities to students at 19 campuses throughout Alabama.

- Catholic Centers of Concern: Provides emergency assistance in the form of food, clothing, furniture, appliances, household articles, personal hygiene items, and financial assistance for medicine, utilities, rent and transportation.

- Catholic Family Services: Provides individual, family and marital counseling, foster care and adoption services.

- ■ Disaster Relief: Provides temporary and long-term relief in the form of food, clothing, shelter and monetary gifts to victims of the April 2011 tornados.

- ■ Beacons of Hope: Promotes evangelization by providing tuition assistance to students who seek an opportunity to attend a Catholic school in the Diocese.

- ■ JustFaith: Members of the parishes in the Diocese participate in a variety of social ministries in the community to experience Christ's call to care for the poor and vulnerable.

- ■ Black Ministry: A program that embraces the universality of the Church and works toward collaboration with a mutual respect of all cultures.

- ■ Society of St. Vincent de Paul: Offers tangible assistance to those in need on a person-to-person basis through financial assistance or in-kind services.

- ■ Hispanic Ministry: Provides opportunities for church members of Hispanic decent to worship and gather for spiritual events. Many times this ministry involves transporting participants to and from activities.

45. Alabama's Episcopal, Methodist and Catholic Church members who provide services, as well as those individuals who receive services from the churches, are subject to criminal prosecution under the Anti-Immigration Law. Churches do not check the immigration status of members or individuals receiving services but know, or have significant reason to suspect, that many of the persons they serve are, or are likely to be, undocumented. As part of their mission, the churches within the Episcopal, Methodist and Roman Catholic communities provide shelter and transportation to individuals in need regardless of their

15

immigration status. The churches also encourage visitors, regardless of their immigration status, to become part of the faith community.

## DEFENDANTS

46. Defendant Robert Bentley is the Governor of the State Alabama. Defendant Bentley exercises "[t]he supreme executive power of" Alabama, Ala. Const. art. V., § 113, and is constitutionally required to "take care that the laws be faithfully executed." Ala. Const. art. V, § 120. As such, Defendant Bentley is responsible for the enforcement of the Anti-Immigration Law in the State of Alabama and is an appropriate defendant in this case. Defendant Bentley is sued in his official capacity.

47. Defendant Luther Strange is the Attorney General of Alabama. Defendant Strange is "the chief law enforcement officer of the state and has supervisory authority over every district attorney in Alabama." Ala. Code § 36-15-14. The Alabama Constitution provides that "[t]he legislature may require the attorney general to defend any or all suits brought against the state," Ala. Const. art. V, § 137, and state statute mandates that the Attorney General "shall appear in the courts . . . of the United States[] in any case in which the state may be interested in the result." Ala. Code § 36-15-1(2). Defendant Strange is responsible for the enforcement of the Anti-Immigration Law in the State of Alabama and is an

appropriate defendant in this case.  Defendant Strange is sued in his official capacity.

48. Defendant Robert L. Broussard is the District Attorney for Madison County.  In that capacity, Defendant Broussard is charged with the duty of enforcing the criminal provisions of Alabama's Anti-Immigration Law with Madison County.  Defendant Broussard is sued in his official capacity.

## FACTS

49. On June 2, 2011, the Alabama legislature enacted the nation's most restrictive anti-immigrant legislation.  Alabama's Anti-Immigration Law extensively regulates both immigrants and those who associate with, speak to or help them.

50. Governor Bentley signed the Anti-Immigration Law on June 9, 2011. The law is scheduled to be enforced on September 1, 2011, except for Sections 22 and 23 (related to state law enforcement staffing and coordination), which went into effect immediately, and Sections 9 and 15 (related to employment verification), which will go into effect in 2012.

51. Representative Hammon originally introduced HB 56 in the State House of Representatives. Senator Scott Beason introduced a similar omnibus anti-immigration bill, Senate Bill 256, in the Senate.  The Anti-Immigration Law is a

17

combination of these two measures and became law 2011-535 after signature by the governor.

52. Legislators expressly stated that the intent of the law was to deport undocumented immigrants and to deter them from living in Alabama. Representative Hammon explained: "This [bill] attacks *every aspect* of an illegal immigrant's life. They will not stay in Alabama . . . . [T] his bill is designed to make it difficult for them to live here so they will deport themselves." Kim Chandler, "Alabama House passes Arizona-style immigration law," *The Birmingham News*, April 5, 2011.

53. In addition, Senator Beason, speaking about immigration policy in February 2011, suggested that individuals "empty the clip, and do what has to be done." Charles J. Dean, "Sen. Scott Beason catching flak over 'empty the clip' comment," *The Birmingham News,* February 8, 2011

54. More than 2,500 Alabama residents, including members of Alabama's Episcopal, Methodist and Roman Catholic churches, participated in a candlelight prayer march in Birmingham on June 25, 2011 in opposition to the law.

55. In short, the history of the Anti-Immigration Law makes clear that the Alabama legislature intended the bill to prohibit residents from freely living their faith to extend compassion to others without first verifying their immigration status in order to cast out undocumented persons from the state.

18

## KEY PROVISIONS OF THE ANTI-IMMIGRATION LAW

56. The Anti-Immigration Law is designed to impose new punishments for violations of immigration law (as defined by state law and state officers); to detain and ultimately to cause the expulsion of undocumented residents from the state; and to criminalize everyday interaction with such individuals, including criminalizing the activities of Alabama's faithful to serve all people regardless of their immigration status.

### Harboring-Related Immigration Crimes (Section 13)

57. In Section 13, the Anti-Immigration Law creates four new state law immigration crimes punishable by fines and/or imprisonment that directly affect the actions of members of Alabama's Episcopal, Methodist and Catholic churches.

58. Section 13(a)(1) criminalizes those who "[c]onceal, harbor or shield" an alien "from detection in any place in this state" if that alien "has come to, has entered, or remains in the United States in violation of federal law." This section criminalizes church ministry activities.

59. Section 13(a)(2) makes it a crime to "[e]ncourage or induce an alien" without legal status "to come to or reside in this state." Church members, who encourage residents to stay and join the church without verifying immigration documents, will be in violation of this section.

19

60. Section 13(a)(3) makes it illegal to "[t]ransport" an alien if that alien "has come to, has entered, or remains in the United States in violation of federal law." This section applies to a wide swatch of transportation activities of the church from providing rides to and from worship services to church day care bus systems to transporting adults to jobs, medical care, or living facilities.

61. Section 13(a)(4) makes it a crime to "harbor an alien unlawfully present ...by entering into a rental agreement." Churches that provide regular shelter to those in need are in violation of this provision.

62. The new state immigration crimes created by Section 13 criminalize routine behavior undertaken on a daily basis by U.S. citizens, especially those who are members of Alabama's churches. Because of the Anti-Immigration Law, Alabama residents are subject to prosecution, fine, and incarceration if state authorities decide that they knew or recklessly disregarded verifying immigration status, and, for example,

- provided transportation to a fellow congregant or someone in need;

- invited a friend to visit from out of state; or

- provided shelter to a person needing help.

In the case of religious leaders, those who perform a marriage without verifying immigration status may be subject to prosecution.

## Contract Provision (Section 27)

63. With limited exceptions, Section 27(a) prohibits Alabama state courts from recognizing or enforcing contracts between an alien unlawfully present in the United States and any other party, provided that the other party had direct or constructive knowledge that the alien was unlawfully present in the United States, and provided that the contract "requires the alien to remain unlawfully present in the United States for more than 24 hours after the time the contract was entered into or performance could not reasonably be expected to occur without such remaining." This provision will impact a church's ability to sell items through church-sponsored thrift stores, perform marriages and baptisms, operate camps, manage day cares and implement other contractual services.

64. Section 27(b) excludes only an extremely narrow range of contracts from its scope: "a contract for lodging for one night, a contract for the purchase of food to be consumed by the alien, a contract for medical services, or a contract for transportation of the alien that is intended to facilitate the alien's return to his or her country of origin."

65. Section 27 is not limited to contracts entered into after the effective date of the Anti-Immigration Law. Section 27 also nullifies the enforcement of contracts entered into before the Law's enactment or effective date.

66. The effect of Section 27 will prohibit Alabama's churches from performing marriages and baptisms, operating day cares and housing facilities, transporting residents, and performing other services due to fear of criminal prosecution from conducting any business with individuals assumed or suspected of being undocumented.

## General Interpretive Provisions Sections 25

67. Section 25 imposes penalties for solicitation, attempt, or conspiracy to violate any criminal provision of Alabama's Anti-Immigration Law.

68. Under Section 25, individuals who are "harbored," "transported," "induced," or allowed to rent are criminally liable along with the individuals whose conduct is directly prohibited under Section 13, on the theory that they have conspired or solicited such activity. Section 25 specifically relates to the activities of Alabama's Episcopal, Methodist and Catholic churches as herein described.

## DECLARATORY AND INJUNCTIVE RELIEF

69. An actual and substantial controversy exists between the plaintiffs and the defendants as to their respective legal rights and duties that they, their clergy, and members of their congregations face. The plaintiffs further assert that they face an imminent threat of harm if the Anti-Immigration Law is enforced, and that this Law violates the U.S. Constitution and federal Law. The defendants are obligated to enforce this law unless it is found to be illegal.

70. In violating the plaintiffs' rights under the U.S. Constitution and federal law, the defendants have acted and will be acting under color of state law.

71. If enforced, the Anti-Immigration Law will cause irreparable injury to the plaintiffs.

72. The plaintiffs have no plain, speedy, and adequate remedy at law against the Anti-Immigration Law other than the relief requested in this Complaint.

73. If not stayed, the Anti-Immigration Law will violate the rights of the plaintiffs, guaranteed by the First Amendment and the Due Process Clause.

74. If enforced, the Anti-Immigration Law will violate the civil rights of the plaintiffs, guaranteed by 42 U.S.C. §1981.

75. In addition, the Anti-Immigration will thwart religious freedom by prohibiting the plaintiffs from exercising the missions of their Christian denominations.

76. In enforcing the Anti-Immigration Law, the defendants will deny the plaintiffs the rights they are secured by the U.S. Constitution and federal law.

77. The defendants' enforcement of the Anti-Immigration Law will constitute an official policy of the state of Alabama.

78. The plaintiffs are entitled to a declaration that the Anti-Immigration Law is unconstitutional on its face and to an order preliminarily and permanently enjoining its enforcement.

23

## CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF THE RIGHT OF FREE EXERCISE OF RELIGION GUARANTEED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

79. The plaintiffs incorporate the foregoing allegations as if fully set out herein.

80. The Anti-Immigration Law violates the right to free exercise of religion as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

81. The Anti-Immigration Law substantially burdens the ability of the plaintiffs along with their respective congregations to live their faith. Specifically, a core tenet of the religions of all four plaintiffs is to show compassion to all people. The plaintiffs and their churches, clergy, laity and followers demonstrate their sincere commitment to helping others by engaging in hundreds of ministries in Alabama to provide meals, housing, transportation and other services to those in need regardless of their immigration status. Under the Law, the plaintiffs cannot help others freely without first verifying the immigration status of those needing help.

82. The defendants have no legitimate or compelling reason for placing a substantial burden on the ability of the plaintiffs to practice their religious beliefs.

83. The Anti-Immigration Law imposes a substantial burden on the plaintiffs' free exercise of religion and violates the First Amendment in such a profound manner that the government should have been aware of its unconstitutionality.

84. As a direct and proximate result of the defendants' actions and custom and practice, the plaintiffs are, out of a fear of being arrested, chilled and deterred from exercising their constitutionally protected freedom of religion rights.

## COUNT TWO
## VIOLATION OF THE RIGHT OF FREE ASSEMBLY GUARANTEED BY THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

85. The plaintiffs incorporate the foregoing allegations as if fully set out herein.

86. The Anti-Immigration Law violates the right to free assembly as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

87. The defendants have no compelling interest for restricting the plaintiffs' right to freely assemble in Alabama churches without threat of criminal prosecution.

88. As a direct and proximate result of the defendants' actions and custom and practice, the plaintiffs are, out of a fear of being arrested, chilled and deterred from exercising their constitutionally protected freedom of assembly rights.

89. Indeed, the defendants have no rational basis for restricting the plaintiffs' right to freely assemble in mainstream Alabama churches without threat of criminal prosecution.

## COUNT THREE
## VIOLATION OF THE RIGHT OF FREEDOM OF SPEECH
## GUARANTEED BY THE FIRST AND FOURTEENTH AMENDMENTS TO
## THE UNITED STATES CONSTITUTION

90. The plaintiffs incorporate the foregoing allegations as if fully set out herein.

91. The Anti-Immigration Law is an unconstitutional infringement, on its face, of the plaintiffs' affirmative rights to freedom of speech and expression secured by the First Amendment to the U.S. Constitution.

92. The Anti-Immigration Law bars constitutionally protected speech and manners of expression in church locations and other locations where churches provide service throughout Alabama.

93. As a direct and proximate result of the defendants' actions, the plaintiffs and the religious denominations they lead will suffer, and will continue to suffer, irreparable harm and will be damaged as a direct result of this conduct.

## COUNT FOUR
## FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE;
## 42 U.S.C. § 1983

94. The plaintiffs incorporate the foregoing allegations as if fully set out herein.

26

95. The Fourteenth Amendment to the U.S. Constitution provides that

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

96. The Anti-Immigration Law impermissibly discriminates against non-citizens on the basis of immigration status and deprives them of the equal protection of the laws within the meaning of the Fourteenth Amendment to the U.S. Constitution.

97. The plaintiffs move for relief on this claim directly under the Constitution and as an action seeking redress of the deprivation of statutory rights under the color of state law, as provided by 42 U.S.C. § 1983.

## COUNT FIVE
## FOURTEENTH AMENDMENT DUE PROCESS CLAUSE;
## 42 U.S.C. § 1983

98. The plaintiffs incorporate the foregoing allegations as if fully set out herein.

99. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, "nor shall any State deprive any person of life, liberty, or property, without due process of law."

100. The Anti-Immigration Law violates the Due Process Clause because its criminal provisions are impermissibly vague and overbroad.

27

101. The plaintiffs move for relief on this claim and seek redress of the deprivation of statutory rights under the color of state law, provided by 42 U.S.C. § 1983.

## COUNT SIX
## CONTRACTS CLAUSE; 42 U.S.C. § 1983

102. The plaintiffs incorporate the foregoing allegations as if fully set out herein.

103. The Contracts Clause, Article I, Section 10 of the U.S. Constitution, provides, in pertinent part, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."

104. Section 27 of the Anti-Immigration Law unconstitutionally impairs the obligation of contracts by forbidding courts of the State of Alabama from enforcing "the terms, or otherwise regard as valid, any contract between a party and alien unlawfully present in the United States, within the meaning of the Law, if the party had direct or constructive knowledge that the alien was unlawfully present in the United States at the time the contract was entered into, and the performance of the contract required the alien to remain unlawfully present in the United States for more than 24 hours after the time the contract was entered into or performance could not reasonably be expected to occur without such remaining."

105. The plaintiffs move for relief on this claim directly under the Constitution and as an action seeking redress of the deprivation of statutory rights under the color of state law, as provided by 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing facts and arguments, Plaintiffs request that the Court:

      a.    Assume jurisdiction over this matter;

      b.    Declare the Anti-Immigration Law unconstitutional in its entirety;

      c.    Enjoin the defendants from enforcing the Law;

      d.    Grant the plaintiffs' costs of suit, and reasonable attorneys' fees and other expenses pursuant to 28 U.S.C. § 1988; and

      e.    Grant such other relief as the Court may deem appropriate.

## THE FOLLOWING DEFENDANTS SHALL BE SERVED VIA PRIVATE PROCESS AT THE FOLLOWING ADDRESS:

Robert Bentley
Governor of the State of Alabama
600 Dexter Avenue
Montgomery, Alabama 36130

Luther Strange
Attorney General of the State of Alabama
501 Washington Avenue
Montgomery, Alabama 36104

Robert L. Broussard
Madison County District Attorney
100 North Side Square
Huntsville, Alabama 358

Augusta S. Dowd (ASB-5274-D58A)
Attorney for Henry N. Parsley, JR., Bishop of the
Episcopal Church in the Diocese of Alabama, in his
official capacity

OF COUNSEL:
White Arnold & Dowd P.C.
2025 Third Avenue North, Suite 500
Birmingham, Alabama 35203
205 323-1888
adowd@whitearnolddowd.com

J. Terrell McElheny (ASB-9967-L68J)
Attorney for William H. Willimon, Bishop of the
North Alabama Conference of the United Methodist
Church in his individual capacity

OF COUNSEL:
Dominick Feld Hyde P.C.
2121 Highland Avenue South
Birmingham, AL 35205
205-939-0033
TMcElheny@dfhlaw.com

F. Grey Redditt, Jr. (ASB-5142-R64F)
Attorney for Thomas J. Rodi, Archbishop of
the Mobile Archdiocese of the Roman
Catholic Church of Alabama, a corporation
sole

OF COUNSEL:
Vickers Riis
P.O. Box 2568
Mobile, AL 36652
251-432-9772
gredditt@vickersriis.com

John F. Whitaker (ASB-3054-E61J)
Attorney for Robert J. Baker, Bishop of
 Birmingham in Alabama, a corporation sole

OF COUNSEL:
Whitaker, Mudd, Simms, Luke & Wells, LLC
2001 Park Place North, Suite 400
Birmingham, AL 35203
205-639-5300
jwhitaker@wmslawfirm.com