UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| RT. REV. HENRY N. PARSLEY, JR., in his official capacity as Bishop of the Episcopal Church in the Diocese of Alabama; et al., ) ) ) ) ) | |
| Plaintiffs, ) | Case Number: 5:11-CV-2736-SLB |
| ) vs. ) ) | |
| ROBERT BENTLEY, in his official capacity as Governor of the State of Alabama, et al., ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This case is presently pending before the court on plaintiffs' Amended Motion for Preliminary Injunction and Memorandum in Support filed on August 10, 2011. (Doc. 47.)[1]

**I. SUMMARY**

On June 2, 2011, the Alabama Legislature approved House Bill 56, the "Beason-Hammon Alabama Taxpayer and Citizen Protection Act," Ala. Laws Act 2011-535, (hereinafter "H.B. 56"). On June 9, 2011, Governor Robert Bentley signed the Act into law; the majority of its provisions were to become effective on September 1, 2011. On August 29, 2011, this court temporarily enjoined the Act until September 29, 2011.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

On August 1, 2011, plaintiffs Rt. Rev. Henry N. Parsley, Jr., in his official capacity as Bishop of the Episcopal Church in the Diocese of Alabama; Rev. Dr. William H. Willimon, in his individual capacity as Bishop of the North Alabama Conference of the United Methodist Church; Most Rev. Thomas J. Rodi, Roman Catholic Archbishop of Mobile, a corporation sole; and Most Rev. Robert J. Baker, Roman Catholic Bishop of Birmingham in Alabama, a corporation sole, (collectively the plaintiffs) filed a Complaint against Robert Bentley, in his official capacity as Governor of the State of Alabama; Luther Strange, in his official capacity as Attorney General of the State of Alabama; and Robert L. Broussard, in his official capacity as District Attorney of Madison County, Alabama, (collectively defendants) seeking declaratory and injunctive relief contending that H.B. 56 violates a number of rights guaranteed under the United States Constitution.  Plaintiffs filed a Motion for Preliminary Injunction on August 5, 2011, (doc. 15), and on August 10, 2011, they filed an Amended Motion for Preliminary Injunction and Memorandum in Support seeking to enjoin only H.B. 56 §§ 13 and 27, (doc. 47), thereafter, plaintiffs filed their First and Second Amended Complaint. (Docs. 48 and 50.)

Upon consideration of the Amended Motion for Preliminary Injunction, the memoranda submitted in support of and in opposition to the Motion and the Amended Motion, the arguments of counsel, and the relevant law, the court is of the opinion that their Amended Motion to enjoin Section 27 of H.B. 56 is due to be denied based on plaintiffs' lack of standing; and that their Amended Motion to enjoin Section 13 of H.B. 56 is due to be

denied as moot based on the court's Order in *United States v. State of Alabama*, 2:11-CV-2746-SLB, which preliminarily enjoins Section 13 on the ground that the United States has established the necessary requirements for a preliminary injunction. Their original Motion, (doc. 15), will be denied as moot.

## II. DISCUSSION

### A.   H.B. 56 § 27

The initial question the court must decide is whether plaintiffs have standing to challenge H.B. 56 § 27. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (noting that whether the plaintiff has standing is the "threshold jurisdictional question"). Plaintiffs contend that this suit is brought "on behalf of themselves as well as the members of their respective faith communities." (Doc. 64 at 27.)[2] However, defendants contend that plaintiffs lack standing because they "assert the rights of numerous other persons without any affirmative showing of a legal right to do so," (doc. 58 at 11); defendants ask the court to "limit its analysis to the rights and injuries of the four Church Leaders themselves," (*id*. at 12). Plaintiffs contend that their status within their religious communities authorizes them to seek "protection for themselves as well as their congregations." (Doc. 64 at 29.) Accordingly, the court will address whether the plaintiffs have standing to bring claims on

---

[2]Paragraph 54 of the Second Amended Complaint states: "Alabama's Episcopal, Methodist and Catholic Church members who provide services, as well as those individuals who receive services from the churches, are subject to criminal prosecution under the Anti-Immigration Law. Churches do not check the immigration status of members or individuals receiving services but know, or have significant reason to suspect, that many of the persons they serve are, or are likely to be, undocumented." (Doc. 50 ¶ 54.)

3

behalf of their religious communities. Also, although defendants do not contest plaintiffs' standing as individuals, the court raises the issue *sua sponte* because individual standing is a fundamental prerequisite to the court's subject matter jurisdiction. *See, e.g.*, *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) ("'Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking' . . . Accordingly, we are obliged to consider questions of standing regardless of whether the parties have raised them." (quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999))).

Article III of the Constitution restricts federal jurisdiction to actual "Cases" and "Controversies," U.S. CONST. art. III, § 2, cl. 1, and standing "'go[es] to the heart of the Article III case or controversy requirement.'" *Florida ex rel. Atty. Gen. v. U.S. Dep't of Health and Human Servs.*, Nos. 11-11021 and 11-11067, 2011 WL 3519178 *2 (11th Cir. Aug. 12, 2011) (quoting *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1247 (11th Cir. 2010)). In its simplest form, standing typically "requires careful judicial examination . . . whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). In order to establish constitutional standing, the party invoking federal jurisdiction must show the following:

> First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.

4

> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations, quotations, and omissions omitted). "If a plaintiff cannot satisfy these constitutional standing requirements, the case lies outside the authority given to the federal courts by Article III and must be dismissed." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1038 (11th Cir. 2008) (citing *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) (en banc)); *see also Bochese*, 405 F.3d at 974 ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims.").

Plaintiffs carry the burden of clearly establishing the requisite elements of standing. Therefore, they must "allege facts demonstrating that [they are the] proper part[ies] to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). "It is not enough that 'the [plaintiff]'s complaint sets forth facts from which [the court] could imagine an injury sufficient to satisfy Article III's standing requirements.'" *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006) (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000)) (first alteration in original). Specifically, the court must "'not speculate concerning the existence of standing, nor should [it] imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none . . . . If the plaintiff fails to meet its burden, this court lacks the power to create jurisdiction by embellishing a deficient allegation of injury.'" *Id*. (quoting *Miccosukee*, 226 F.3d at 1229-30).

### 1.     Individual Standing

The injury-in-fact requirement, the crux of the standing analysis, requires plaintiffs to "'show that [they] *personally* [have] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)(quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979)(emphasis added)). When seeking pre-enforcement review of an allegedly unconstitutional statute, "'[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)). A plaintiff establishes injury-in-fact for standing purposes by "demonstrat[ing] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Plaintiffs assert that "Section 27 . . . unconstitutionally impairs the obligation of contracts" pursuant to the Contracts Clause of Article I, Section 10 of the United States Constitution.[3]  (Doc. 50 ¶ 113.)  H.B. 56 § 27(a) provides:

---

[3]Although the right to "freely contract" is protected under the Due Process Clause of the Fourteenth Amendment, nothing in the record suggests that plaintiffs seek injunctive relief on this basis. *See W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 406 (1937) ("That the clause of the Fourteenth Amendment which forbids a state to deprive any person of life, liberty, or property

> No court of this state shall enforce the terms of, or otherwise regard as valid, any contract between a party and an alien unlawfully present in the United States, if the party had direct or constructive knowledge that the alien was unlawfully present in the United States at the time the contract was entered into, and the performance of the contract required the alien to remain unlawfully present in the United States for more than 24 hours after the time the contract was entered into or performance could not reasonably be expected to occur without such remaining.

Plaintiffs specifically allege that H.B. 56 § 27 "will prohibit Alabama's churches from performing marriages and baptisms, operating day cares and housing facilities, transporting residents, and performing other services due to fear of *criminal prosecution* from conducting any business with individuals assumed or suspected of being undocumented."[4] (Doc. 50 ¶ 75 [emphasis added].) These allegations do not give rise to a concrete and imminent injury-in-fact required for plaintiffs in their individual capacities.

---

without due process of law includes freedom of contract is so well settled as to be no longer open to question."). Under the Due Process Clause, the Second Amended Complaint only alleges that the "Anti-Immigration Law" is unconstitutionally "vague and overbroad," (doc. 50 ¶ 109), and plaintiffs' later submissions reveal that this challenge is based upon the future operation and enforcement of H.B. 56 § 13 and 27. The Second Amended Complaint indicates that H.B. 56 § 27 is the statutory basis for their Contracts Clause claim, (*id*. at ¶¶ 112, 113), and the court finds this as the only constitutional ground upon which plaintiffs challenge H.B. 56 § 27. Nonetheless, even if plaintiffs did assert a "freedom of contract" claim under the Due Process Clause, they would not have standing because they have not alleged any intent to enter into contracts unenforceable under H.B. 56 § 27.

[4]Plaintiffs assert that entering into contracts within the scope of H.B. 56 § 27 subjects individuals to **criminal punishment**. (Doc. 50 ¶¶ 6, 75.) However, the court notes that H.B. 56 § 27 prevents Alabama courts from enforcing or validating certain contracts with unlawfully-present aliens, but it does not criminalize the act of entering into a contract with an unlawfully-present alien. Thus, plaintiffs' fear of criminal prosecution under H.B. 56 § 27 for contracting with unlawfully-present aliens is unfounded.

7

When analyzing a Contracts Clause claim, the court considers three factors: "(1) whether the law substantially impairs a contractual relationship; (2) whether there is a significant and legitimate public purpose for the law; and (3) whether the adjustments of rights and responsibilities of the contracting parties are based upon reasonable conditions and are of an appropriate nature." *Vesta Fire Ins. Corp. v. Florida*, 141 F.3d 1427, 1433 (11th Cir. 1998) (citing *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 410-13 (1983)). The threshold question for the court is whether a contractual relationship exists at the time of the challenged statute's enactment. *See General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (noting that the first-prong of a Contracts Clause inquiry has three subcomponents: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial"). This element is uncontroverted in most cases, but when a plaintiff does not allege a contractual relationship that is impaired under the challenged statute, some courts have framed the issue as one of standing. *See, e.g.*, *Williams v. Eggleston*, 170 U.S. 304, 309 (1898) (holding that a party cannot challenge a state statute's constitutionality pursuant to Article I, Section 10 unless he is a party to the impaired contract); *Mercado-Boneta v. Administracion del Fondo de Compensacion al Paciente*, 125 F.3d 9, 12 n.5 (1st Cir. 1997) (noting that one plaintiff "lack[ed] standing to assert a Contract[s] Clause claim, as he ha[d] no contractual relationship with [the defendant]"). Without alleging a *personal* contractual relationship

impaired under the statute, plaintiffs have not alleged a *personal* actual or threatened injury-in-fact arising from the statute's operation or enforcement.

Here, plaintiffs lack individual standing to challenge H.B. 56 § 27 under the Contracts Clause because their allegations focus solely on the statute's interference with the ability of plaintiffs' "churches" to freely contract with unlawfully-present aliens. (Doc. 50 ¶¶ 6, 72, 75.) Nothing before the court indicates that plaintiffs, as individuals, have contractual relationships with or intend to contract with unlawfully-present aliens. Without such allegations, the court can only speculate whether plaintiffs, in their individual capacities, have existing contracts with unlawfully-present aliens that could be affected by H.B. 56 § 27.

Standing "'must *affirmatively appear* in the record.'" *CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1276 (11th Cir. 2006) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). The record in this case does not reveal the required proof of an injury-in-fact as required for constitutional standing. The court finds that plaintiffs have not shown "a realistic danger of sustaining a direct injury as a result of [H.B. 56 § 27]'s operation or enforcement." *See Babbitt*, 442 U.S. at 298.

### 2. Associational Standing

Plaintiffs' argument for speaking on behalf of their members, without labeling it as such, is one of "associational standing." (*See* doc. 50 ¶ 78 ["An actual and substantial controversy exists between the plaintiffs and the defendants as to their respective legal rights and duties that they, their clergy, and members of their congregations face."].) The Supreme

Court recognizes that "an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth*, 422 U.S. at 511. An association obtains standing over its members' claims when: "'[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1344 (11th Cir. 2005) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). Thus, an association may assert the claims of its members in the absence of injury-in-fact to itself. *See, e.g.*, *Warth*, 422 U.S. at 511 ("Even in the absence of injury to itself, an association may have standing solely as the representative of its members."); *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999) ("It has long been settled that an organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing.").

To the extent plaintiffs assert claims on behalf of their churches and members, their allegations are insufficient to support their standing to challenge H.B. 56 § 27. As set forth above, to have standing to assert a claim under the Contracts Clause, a plaintiff must allege a contract that will be impaired under H.B. 56 § 27. Plaintiffs allege that H.B. 56 § 27 impacts their churches' ability to "sell items through church-sponsored thrift stores, perform marriages and baptisms, operate camps, manage day cares and implement other contractual

services." (Doc. 50 ¶ 72.) Plaintiffs also allege that Section 27 affects their ability to "transport[] residents," (*id.* ¶ 75), and "provid[e] counseling services," (*id.* ¶ 6). The court notes that H.B. 56 § 27 will not impact the churches' ability to sell items as such transactions are not contracts that require an unlawfully-present alien to stay in the United States for more than twenty-four hours. The court agrees with defendants' argument that Section 27 does not reach the covenants of baptism or marriage or other religious sacraments. (Doc. 58 at 24.) As defendants also correctly note, "the fact that Act 2011-535 does not purport to interfere with the fundamental right to marriage is evident in Section 30 [of the Act]," which excludes marriage licenses from the definition of a "business transaction" under the Act. (Doc. 58 at 25.) Moreover, marriage and baptism ceremonies do not require unlawfully-present aliens to stay in the United States for more than twenty-four hours. *See* H.B. 56 § 27(a). The Second Amended Complaint also does not allege that operating camps and managing day cares, which are open to unlawfully-present aliens, require contracts for their operation or management. Similarly, there is no allegation indicating that providing transportation or counseling services requires a contractual relationship. In short, the Second Amended Complaint does not allege facts sufficient to support a finding that the churches and/or their members have contracts with unlawfully-present aliens or that they intend to contract with unlawfully-present aliens. Without such allegations, the churches and church

members would not have standing to challenge H.B. 56 § 27 on their own behalf, and therefore, plaintiffs do not meet the requisite elements of associational standing.[5]

Because the court finds plaintiffs, individually and on behalf of their churches, clergy, and members have not alleged an injury-in-fact based upon the operation or enforcement of H.B. 56 § 27, their Amended Motion for Preliminary Injunction, (doc. 47), is due to be denied.

**B.  H.B. 56 § 13**

Plaintiffs ask this court to enjoin Section 13 of H.B. 56.  In *United States v. State of Alabama*, 2:11-CV-2746-SLB, the court preliminarily enjoined Section 13 on the ground that the United States has met all the necessary requirements for a preliminary injunction. Therefore, because Section 13 is enjoined pending further proceedings, the plaintiffs' Motion for Preliminary Injunction enjoining Section 13 of H.B. 56 is moot.

---

[5]The plaintiffs have also not alleged that any consideration is exchanged for the charitable services they provide to unlawfully-present aliens.  Given the nature of these charitable services, it is reasonable to infer that the church does not require unlawfully-present aliens to give consideration. "The courts have established many distinctions between gifts and other transactions.  Owing to the absence of consideration, a gift inter vivos does not come within the legal definition of a contract."  *Thomas v. Omega Men of N. Ala., Inc.*, 714 So. 2d 982, 984 (Ala. Civ. App. 1997) (quoting 38 AM. JUR. 2D *Gifts* § 2 (1968)).  Thus, without a showing of consideration exchanged, these "contracts" are simply gifts and outside the purview of H.B. 56 § 27.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that plaintiffs do not have standing to challenge Section 27 of H.B. 56, and their request that the court enjoin Section 13 of H.B. 56 is moot. An Order denying plaintiffs' Amended Motion for Preliminary Injunction, (doc. 47), will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 28th day of September, 2011.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE